IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ALLEN CALTON, §
(TDCJ # 1123880) §
 §
VS. § CIVIL ACTION NO.4:05-CV-703-Y
 §
TARRANT COUNTY, TEXAS, et al. §

OPINION and ORDER OF PARTIAL DISMISSAL UNDER 28 U.S.C. §§ 1915A(B)
and UNDER 28 U.S.C. §§ 1915(e)(2)(B)

This case is before the Court for review of pro-se inmate and plaintiff Allen F. Calton's pleadings under the screening provisions of 28 U.S.C. §§ 1915A and 1915(e)(2)(B). After the Court initially reviewed Calton's form amended complaint, handwritten attachment pages, and exhibits, it directed Calton to file a more definite statement, to include answers to specific enumerated questions about his claims against the numerous defendants. Calton has filed a more definite statement with an appendix in support.

Calton has named thirty-one defendants in this case alleging claims arising from several different incidents. The first incidents involve alleged denial of proper medical care for different conditions: burning eyes and blurred vision resulting from capsium pepper spray and an alleged back injury resulting from a trip and fall. Associated with theses claims are defendants Tarrant County, Dee Anderson, Tarrant County Hospital John Peter Smith Health Network, David Cecero, a Ms. Chandler, Dr. James Waggener, Daisy May Jackson, Debbie Fanal, Radiologist Curtis, Nurse Jacqueline, and an emergency room Jane Doe physician.

The next incident involves allegations that several officers of Tarrant County conspired to move Calton to lockdown status without any hearing, in violation of his right to due process of law and access to courts. Associated with these allegations are defendants David M. Stromile, Cedric Simon, Gayle Gray, Lieutenant Christian, Eugene L. Garcia, Carl Garrett, Charlie Akomas, and D. Bailey.

The next incident involves allegations that Calton was intentionally and deliberately sprayed with capsium pepper spray by officer Gracia, under orders and with the knowledge and consent of several other officers. The defendants associated with this incident are Richard Closner, J. Evans, Don C. Taylor, Mr. Felton, Mr. Gracia, and Mr. Collier.

Calton, who represented himself in criminal proceedings before the 213th Judicial District Court, next alleges that during the trial proceedings, he was forced to wear a shock belt at the orders of several Tarrant County officers. Associated with this claim are defendants Mr. Cole, Dave Derusha, James Thomas, and Sam Haber.

The last allegation is against lone defendant Corporal Harrison for allegedly being deliberately indifferent to Calton's serious medical needs by ordering him to walk back to his cell even though he knew Calton had blurred vision, whereupon Calton alleges he tripped and injured his back and leg.

A complaint filed in forma pauperis that lacks an arguable basis in law should be dismissed under 28 U.S.C. § 1915.[1] Under 28 U.S.C. § 1915(e)(2)(B), a district court retains broad discretion in determining at any time whether an in-forma-pauperis claim should be dismissed.[2] Furthermore, as a part of the PLRA, Congress enacted 28 U.S.C. § 1915A, which requires the Court to review a complaint from a prisoner seeking relief from a governmental entity or governmental officer or employee as soon as possible after docketing.[3] Consistent with § 1915A is prior case law recognizing that a district court is not required to await a responsive pleading to conduct its § 1915 inquiry.[4] Rather, § 1915 gives judges the power to "dismiss a claim based on an indisputably meritless legal theory."[5] After review of the complaint and the more definite statement filings under these standards, the Court concludes that many of Calton's claims, and many of the defendants, must be dismissed.

---

[1] *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). Section 28 U.S.C. § 1915(e) *requires* dismissal not only when an allegation of poverty is untrue or the action is frivolous or malicious, but also when "the action . . . fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.A. § 1915(e)(2)(A) and (B)(West 2006).

[2] *See* 28 U.S.C.A. § 1915(e)(2)(West 2006); *Adepegba v. Hammons,* 103 F.3d 383, 388 (5th Cir. 1996); *see also Wesson v. Oglesby,* 910 F.2d 278, 281 (5th Cir. 1990)(discussing authority to dismiss at any time under prior § 1915(d)).

[3] *See* 28 U.S.C.A. § 1915A(a)(West 2006).

[4] *See Schultea v. Wood,* 47 F.3d 1427, 1434 (5th Cir. 1995).

[5] *Id., citing Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

In addition to naming as defendants Tarrant County, Texas, and the Tarrant County Hospital John Peter Smith Health Network, Calton has named the individual defendants, each of whom is alleged to be an employee of one of these defendants, in an official capacity. As such official-capacity claims against the individual defendants are redundant to the claims pending against Tarrant County, Texas, and Tarrant County John Peter Smith Health Network, the official-capacity claims must be dismissed.[6]

To assert a claim for damages for violation of federal constitutional rights under 42 U.S.C. § 1983, a plaintiff must set forth facts in support of both of its elements: (1) the deprivation of a right secured by the Constitution or laws of the United States; and (2) the deprivation was imposed by a person acting under color of law.[7] With regard to Calton's claim of having received inadequate medical care, the elements of a constitutional claim are well known: deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment under the Eighth Amendment.[8] Also, the due-process clause of the Fourteenth Amendment prohibits municipal officials from responding with "deliberate indifference"

---

[6] *See Brooks v. George County, Mississippi,* 84 F.3d 157, 165 (5th Cir.), *cert. den'd,* 519 U.S. 948 (1996), *citing Hafer v. Melo,* 502 U.S. 21 (1992).

[7] *See West v. Atkins,* 487 U.S. 42, 48 (1988)(citing cases); *Resident Council of Allen Parkway Village v. U.S. Department of Housing and Urban Development,* 980 F.2d 1043, 1050 (5th Cir.), *cert. denied,* 510 U.S. 820 (1993).

[8] *Estelle v. Gamble,* 429 U.S. 97, 104-106 (1976).

4

to the serious medical needs of a pretrial detainee.[9] Such a finding of deliberate indifference, though, "must rest on facts clearly evincing 'wanton' actions on the parts of the defendants."[10] This subjective deliberate-indifference standard is now equated with the standard for criminal recklessness:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference.[11]

The United States Court of Appeals for the Fifth Circuit has described the high hurdle of deliberate indifference:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.[12]

---

[9] *See Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir.1999); *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir.1996), *appeal after subsequent remand,* 135 F.3d 320, 327 (5th Cir. 1998).

[10] *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985); *see also Wilson v. Seiter,* 501 U.S. 294, 297 (1991).

[11] *Farmer,* 511 U.S. at 837; *see also Hare,* 74 F.3d at 648.

[12] *Domino v.          ,* 239 F.3d 752, 756 (5th Cir.2001); *see generally* 29 U.S. at 106 ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *and Varnardo v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991)(unsuccessful medical treatment, neglect, nor medical malpractice give rise to a § 1983 cause of action)(citations omitted).

In Calton's allegations regarding medical care, he acknowledges that he refused a procedure recommended for him on the first instance complained of, which occurred on February 22, 2004. Calton alleges that emergency-room medical personnel were allowed to discontinue medical care and treatment altogether when he declined a "spinal tap" procedure. Calton alleges that, consistent with this policy, he was denied medical care by Dr. James Waggener, through Waggener's phone contact to nursing personnel, and by an emergency-room physician identified as Jane Doe. With regard to Ms. Chandler, Daisy May Jackson, Debbie Fanal, radiologist Curtis, nurse Jacqueline, and nurse Cynthia Tucker, Calton alleges they failed to provide treatment to him consistent with the alleged policy not to treat him because of his refusal to agree to certain procedures. These individual medical personnel cannot be said to deliberately indifferent if they were following a policy set out for them by their employer. Outside of these allegations, with regard to Chandler, Jackson, Fanal, and radiologist Curtis, Calton alleges that each assisted in removing him off of a backboard, in a "dumping fashion," onto a mattress that was on the floor in a room at the Tarrant County jail infirmary, where "he landed and felt a pop in his back and sharp pain shoot down his leg." On its face, these allegations state nothing more than possible negligence in the movement of Calton from the backboard to the mattress. As such, the Court concludes that Calton's claims of deliberate indifference against Chandler, Jackson, Fanal, radiologist Curtis, nurse Jacqueline and Tucker must be dismissed under authority of 28 U.S.C.

§ 1915A and 1915(e)(2)(B).

Furthermore, Plaintiff's allegations do not give rise to a claim of deliberate indifference on the part of defendant Corporal Harrison. Calton's allegation that Harrison should have known that he was likely to suffer a fall if he walked back to his cell unassisted is not enough to state deliberate indifference. Calton's claims again Harrison must be dismissed.

With regard to Calton's claim for compensatory and punitive damages for his being placed in lockdown and required to wear a shock belt during his criminal trial, even if a constitutional violation (Calton infers a denial of access to courts) is alleged, Plaintiff's claims are not cognizable under 42 U.S.C. § 1983. (Amend. Compl. § VI, attachment pages 72-73.) This is so because, in *Heck v. Humphrey,* 512 U.S. 477, 486 (1994), the Supreme Court held that a § 1983 claim that, in effect, attacks the constitutionality of a conviction or imprisonment is not cognizable under § 1983 and does not accrue until that conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."[13]

Calton acknowledges that he represented himself before the 213th Judicial District Court on a charge of attempted murder in cause

---

[13] *Heck,* 512 U.S. at 486-87; *see also Wells v. Bonner,* 45 F.3d 90, 94 (5th Cir. 1995).

7

number 0843168, and that he was convicted and sentenced to life in prison. (MDS at 37-39; 44-45.) In support of his claim that the defendants' retaliatory assignment of him to lockdown denied him access to the courts, Calton insists that, but for Defendants' action, he would have been able to develop and present testimony to the 213th Judicial District Court in support of his motion to dismiss on the basis of a violation of his right to a speedy trial. (MDS at 38-39.) In his recitation of claims against the defendants, which he associates with denying him access to the courts, Calton recites: "Plaintiff was a pro se defendant and was denied direct access to the law library due to the new housing assignment and had to waive a speedy trial hearing on 2-12-2004 and a suppression hearing on 2-26-2004 due to unable [sic] to prepare for both pre-trial proceedings." As Calton alleges he was denied the right to challenge his conviction on the basis he was denied a speedy trial, any success on such claims effectively challenges Calton's conviction.[14]

As in *Heck*, Plaintiff's challenges, if successful, necessarily would imply the invalidity of his incarceration and conviction, and are thus not cognizable under § 1983 unless Plaintiff has satisfied the conditions set by *Heck.* Plaintiff has failed to establish that he has met one of the prerequisites to a § 1983 action set forth by the Supreme Court. Plaintiff remains in custody and has not shown that his conviction has been invalidated by a state or federal

---

[14]*See generally Stauder v. Randall County,* No.2:04-CV-232, 2005 WL 1214643 at *3, (N.D.Tex. May 20, 2005, *report and recommendation adopted,* (June 15, 2005)(finding a favorable determination on plaintiff's claims of a violation of his right to a speedy trial could call into question the validity of the conviction and thus barred).

court. As a result, Plaintiff's claim that he was denied his constitutional rights of access to the courts and to a speedy trial by being punitively placed in lockdown is not cognizable under § 1983, and must be dismissed pursuant to 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i) and (ii).[15]

With regard to Calton's allegations concerning the requirement by Tarrant County officials that he wear a "shock belt," Calton recites that:

> Plaintiff was prejudiced due to the distractions caused by wearing the shock belt during the trial. Failed to effectively examine witnesses as well as forgot to call several subpoenaed witnesses who were available to testify in support of his self defense claim and automatism defense. The Life sentence Plaintiff received due to his defense was impeded because he was forced to wear a shock belt that occasionally malfunctioned was in violation of Plaintiff's right to access to court, self representation, effective assistance of counsel, and due process. (Amend Complaint at 67-70.)

As success on this claims would necessarily challenge the validity of his conviction in the 213th Judicial District Court, it is also not cognizable under the *Heck* doctrine, and must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B).

Therefore, all of Plaintiff's claims against the individual defendants in an official capacity are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915A(b)(1) and, alternatively, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

All of Plaintiff's claims against individual defendants Ms. Chandler, Daisy May Jackson, Debbie Fanal, radiologist Curtis, nurse

---

[15] *See Heck*, 512 U.S. at 487-88.

Jacqueline, Cynthia Tucker, and Mr. Harrison are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915A(b)(1) and, alternatively, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

All of Plaintiff's claims against Tarrant County for denial of access to courts and for being forced to wear a shock belt during his criminal trial; and all claims against defendants D.M. Stromile, Cedric Simon, Gayle Gray, Lieutenant Christian, Eugene L. Garcia, Carl Garrett, Charlie Akomas, D. Bailey, Mr. Cole, Dave Derusha, James Thomas, and Sam Haber, are DISMISSED WITH PREJUDICE to their being asserted again until the *Heck v. Humphrey* conditions are met, pursuant to 28 U.S.C. § 1915A(b)(1) and pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).[16]

SIGNED October 22, 2007.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[16]*See Johnson v. McElveen,* 101 F.3d 423, 424 (5th Cir. 1996).